MARY C. PORTER, The (TUCKER v.). See Case No. 14,223.

---

## Case No. 9,205.

### The MARY DOANE.

[2 Lowell, 428.] [1]

District Court, D. Massachusetts. Sept., 1875.

COLLISION—ON STARBOARD TACK—FOUL WEATHER —OFFICER ON DECK—INTEREST ON DAMAGES.

1. It is the duty of a vessel on the port tack to clear a vessel on the starboard tack.
[Cited in The Abby Ingalls. 12 Fed. 218.]

2. In thick or foul weather it is especially the duty of a vessel on the port tack to exercise all possible vigilance and care; there should be some one on deck competent to give necessary orders instantly upon an emergency.

3. Interest not allowed as damages when the bills of repairs had not been actually paid at the time the cause was tried.

Libel for damage to the fishing-schooner Alice P. Higgins, by collision with the fishing-schooner Mary Doane, on the afternoon of June 17, 1874, on Nantucket Shoals. Both vessels were lying-to in a fog, with their helms hard down, and relying chiefly on their foresails; and the witnesses for each party testified that their vessel was making from two knots to two and a half knots. The libellants' vessel was on the starboard tack, and the Mary Doane on the port tack.

The case for the libellants was, that they discovered the Mary Doane at a considerable distance, estimated to be half a mile,

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

about a point under their lee bow; that they blew a horn and shouted, but that nothing was done by the other schooner, excepting, perhaps, to haul aft the mainsail, and that the vessels came together near the bows, causing the damage described.

The respondents admitting the collision and the state of the wind, denied all negligence on their part, and asserted the fog to have been so dense that it was impossible for them to do anything after the time that they discovered, or could have discovered, the Alice P. Higgins.

The Mary Doane had her helm lashed, and, when the master was called up by the lookout, he found he could not go astern of the libellants' schooner, and tried, by hauling aft his mainsail and letting go his jib, to bring his vessel up alongside the Higgins.

There was conflicting testimony upon the amount of fog, and as to certain admissions said to have been made by the master of the Mary Doane.

H. P. Harriman, for libellants.

J. M. Day, for claimants.

LOWELL, District Judge. It is not denied that the libellants complied with the statute in their use of the fog-horn, though the sound does not appear to have been heard on board the Mary Doane. It was argued that the vessel to leeward is, or may be bound to give way, under the peculiar circumstances of such a case as this; but I cannot yield to this suggestion. The vessels were under way, though not in the ordinary mode of navigation in clear weather, and the vessel on the port tack was bound to give way. If the libellants had undertaken the responsibility of going to leeward, it would have been at their own risk, and would most probably have brought about a collision, if it had happened that they had been seen a little sooner. In this respect the case is like one of great importance, from the very large damages involved in it, which came up in this district a few years since, between two whaling-ships, which were lying-to in the Arctic Ocean in a gale, in which it was decided that the ship on the port tack was bound to clear the ship on the starboard tack. The Ontario [Case No. 10,543]. This ruling was affirmed in the circuit court: Swift v. Brownell [Id. 13,695].

The libellants, then, having the right of way, and having made such signals by fog-horns as they should have made, are the claimants excused by the state of the weather? Upon this point the evidence is not to be reconciled. In a matter where estimates and comparative statements are necessary, there is great opportunity for unconscious exaggeration on either side.

It is plain that in a fog of considerable density it was peculiarly the duty of a vessel on the port tack to exercise all possible vigilance and precaution; and the evidence shows that no one competent to navigate the Mary Doane was on her deck. When the young man on the lookout saw something under the lee bow, and had satisfied himself that it was a vessel, he ran aft and called the master from the cabin. To be sure, there was a man, and perhaps a good navigator, on deck, but it was not his watch, and he was doing nothing, and he disclaims all responsibility. Suppose this man, or any other person corresponding to the officers of a merchant vessel, to have been in charge, the boy would have notified him at once, when he first saw the object, and would have had the benefit of his skill and experience, not only in handling the ship, but in ascertaining the nature of the danger. Where a ship was sailing before the wind in such a position that another ship approaching towards the bows could not be seen from the quarter-deck, Judge Sprague held that the lookout himself should have been a person competent to give the requisite order to the helmsman in case of meeting a ship: Allen v. Mackay [Case No. 228]. So in this case there should have been some one on deck whose duty it was to give the necessary directions instantly.

Then, was the fog so dense that no reasonable amount of vigilance and preparation would have availed? I do not think so. Whatever deductions are to be made from the libellants' estimates of the distance at which they saw the Mary Doane, I think the preponderance of the evidence is, that they saw her some time before they were seen. And I consider it altogether probable that the time which the claimants might have had, if they had used their opportunities, would have been enough to enable them to keep off, and go under the stern of the Alice P. Higgins.

I must hold the defendant vessel responsible.

I find the aggregate of the bills of repairs produced at the trial to be $197.80, and I award for detention $60, making the total $257.80 and costs.

I do not allow interest, because the largest bill, more than half the total, has not yet been paid. Decree accordingly.